IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| REVENUE SCIENCE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07CV516 |
| | ) | GBL/TRJ |
| VALUECLICK, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR COMBINED
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION UNDER
FED. R. CIV. P. 12(b)(2)AND IMPROPER VENUE UNDER FED. R. CIV. P.
12(b)(3), OR IN THE ALTERNATIVE, TO TRANSFER TO THE CENTRAL
DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404 AND/OR § 1406**

**I.     INTRODUCTION**

This case is a retaliatory strike-suit. Revenue Science's tactic in filing it here is

obvious.  Revenue Science seeks to use the well-known speed of this Court as improper

leverage in an overall dispute that began earlier on the West Coast.  Fortunately, the law

does not permit such forum shopping on the facts that exist here.  Either this case should

be dismissed for lack of personal jurisdiction and improper venue, or it should be

transferred to the Central District of California for the convenience of the parties and the

witnesses.

**II.     FACTUAL BACKGROUND**

This patent case does not belong here. In this case, Revenue Science sued seven

related Defendants in the Eastern District of Virginia, even though Revenue Science is

not organized under the laws of the Commonwealth of Virginia, has no offices in the Commonwealth of Virginia, and has no material witnesses in the Commonwealth of Virginia.  Worse yet, it sued knowing that none of the Defendants has sufficient connections with this forum to justify being haled into court here by a nonresident plaintiff.

In fact, ValueClick recently sued Revenue Science in the Central District of California (a proper venue) for infringement of *its* patents, in Case No. CV 07 2502 MMM (JCX), filed March 28, 2007.  On May 23, 2007, the day before Revenue Science filed its answer in the Central District of California, Revenue Science filed the present action against ValueClick and six of its wholly owned subsidiaries (collectively, the ValueClick Defendants).  Revenue Science sued here without first having notified any of the ValueClick Defendants of any alleged infringement dispute.

### A.    Absence of Contacts with the Commonwealth of Virginia

As described in the accompanying Declaration of Samuel J. Paisley:

- no ValueClick Defendant is organized under the laws of the Commonwealth of Virginia;

- no ValueClick Defendant owns real property in the Commonwealth of Virginia;

- no ValueClick Defendant is registered to do business in the Commonwealth of Virginia;

- no ValueClick Defendant leases office space or any other space in the Commonwealth of Virginia;

- no ValueClick Defendant has any office or location in the Commonwealth of Virginia;

- no ValueClick Defendant has any telephone number, listed or unlisted, in the Commonwealth of Virginia;

- no ValueClick Defendant employs any people in the Commonwealth of Virginia;

- no ValueClick Defendant owns any bank accounts in the Commonwealth of Virginia;

- all significant contracts (such as the terms and conditions that apply between ValueClick entities and all or nearly all advertisers and publishers) state a California venue and choice of law requirement;

- no relevant ValueClick Defendant websites are interactive since none of them permit purchase of any products or services without interacting offline;

- no business of any ValueClick Defendant is specifically directed to the Commonwealth of Virginia; and

- no ValueClick Defendant has any presence of any significant kind in the Commonwealth of Virginia.

(See Paisley Decl. ¶¶ 4-15). Rather, instead of the Commonwealth of Virginia, ValueClick's main offices (and that of most of its Defendant subsidiaries) are in Westlake Village or Santa Barbara, California. (See Paisley Decl. ¶ 16). ValueClick and/or its subsidiaries have relatively small offices in Harrisburg, Pennsylvania; Louisville, Kentucky; Marlborough, Massachusetts; New York, New York; San

Francisco and Agoura Hills, California; and Chicago, Illinois. (See Paisley Decl. ¶ 16).
Except for PriceRunner AB (which is organized under the laws of Sweden), all of the
ValueClick Defendants are organized under the laws of Delaware. (See Paisley Decl. ¶
4).

**B.**     **The Situs of the Alleged Infringement Cannot Be In Virginia**

Revenue Science's Complaint does not reveal what rights Revenue Science is
supposedly asserting.  The Complaint fails to name any particular technology made, used
or sold by ValueClick Defendants, either individually or together.   It speaks in
generalities.   The ValueClick Defendants address this lack of particularity in their co-
pending Rule 12(e) motion.

Whether or not Revenue Science ever makes its allegations sufficiently particular,
it is clear that the alleged infringement, if it happened anywhere, did not happen in the
Commonwealth of Virginia.  The patents-in-suit are U.S. Patent Nos. 6,917,972 (the '972
Patent), 7,035,925 (the '925 Patent), and 7,107, 338 (the '338 Patent).  The patents-in-suit
together comprise 194 patent claims, of which 27 are independent claims.  In each case,
the independent claims are directed either to:

- A computer-implemented method for analyzing certain kinds of data,
  including steps of receiving the data and analyzing it in a particular way
  (e.g., '972 Patent at claims 1, 13, 66, 82, 84, 86, 89, 95, 103, 108; '925
  Patent at claims 1, 38; '338 Patent at claims 1, 18, 28, 33, 40); or

- A computer-readable medium whose contents cause a computing device to
  analyze certain kinds of data, including by receiving the data and

analyzing it in a particular way (e.g., '972 Patent at claims 59, 81, 96, 102; '925 Patent at claim 31; '338 Patent at claim 27); or

- A computer device / computer system for analyzing certain kinds of data, including steps of receiving the data and analyzing it in a particular way (e.g., '972 Patent at claims 63, 65; '925 Patent at claims 35, 37).

Under the Patent Act, direct infringement involves either making, using, selling, importing or offering for sale a patented invention. 35 U.S.C. § 271(a). Based on the very nature of Revenue Science's patent claims, if the acts of alleged infringement occur anywhere, they occur at the situs of the computer device, system or medium where particular computer steps for receiving and analyzing data are undertaken. As explained below, none of the ValueClick Defendants makes, uses, sells, imports or offers for sale any such computer or computer method in the Commonwealth of Virginia.

ValueClick, Inc. (the parent), with its subsidiaries, is a comprehensive online marketing services company. (See Paisley Decl. ¶ 17). ValueClick and its subsidiaries sell targeted and measurable online advertising campaigns and programs for advertisers and advertising agency customers, generating qualified customer leads, online sales and increased brand recognition on their behalf with large numbers of online consumers. (See Paisley Decl. ¶ 17). None of the seven named Defendants sells any goods of any kind whatsoever. (See Paisley Decl. ¶ 17). Rather, their business areas and business models hinge around serving electronic data over the internet, as follows:

| Name | Business Area | Business Model |
|---|---|---|
| ValueClick, Inc. (Delaware) | Provide advertisers access to online advertising networks, which are composed of multiple online publishers (e.g., | **Display advertising.** Receive payments from advertisers; pay a portion of that to publishers as a commission. |

| | websites). | |
|---|---|---|
| FastClick, Inc. (Delaware) | Provide advertisers access to online advertising networks, which are composed of multiple online publishers (e.g., websites). | **Display advertising.** Receive payments from advertisers; pay a portion of that to publishers as a commission. |
| Web Clients, Inc. (Delaware) | Manage online campaigns that generate qualified customer inquiries for an advertiser's product or service. | **Lead generation, opt-in email marketing.** Receive payments from an advertiser for each online consumer who opts-in. |
| Commission Junction, Inc. (Delaware) | Enable advertisers to develop their own fully commissioned online sales force comprised of third-party publishers. | **Affiliate marketing.** Receive payments from advertisers when visitor to an affiliate publisher takes agreed-on action; pay a portion of that to publishers as commission. |
| Be Free, Inc. (Delaware) (Integrated into Commission Junction in 2004). | See Commission Junction. | See Commission Junction. |
| Pricerunner AB (Sweden) | Enable consumers to research and compare products from online/offline merchants. | **Comparison Shopping.** Merchants pay primarily on a "per click" basis when consumers click through to the merchants' websites. |
| Mediaplex, Inc. (Delaware) | Provide technology on an application services provider (ASP) basis to enable advertisers to implement and manage their own online display advertising and email campaigns. | **Technology.** Advertisers primarily pay on a "per impression" basis. |

(See Paisley Decl. ¶ 18).

As shown, all of the Defendants' relevant business activities involve either online display advertising, online lead generation, online comparison shopping, or online ASP-based technology for advertisers. (See Paisley Decl. ¶ 19). All of these activities are

enabled by various computer servers and server farms located elsewhere in the United States and outside, but none in Virginia. Presently, the Defendants' servers and server farms are located in California (Sunnyvale, San Jose, Agoura Hills, Los Angeles and El Segundo), Pennsylvania (Mechanicsburg); England (London) and Sweden (Stockholm). (See Paisley Decl. ¶ 19). All data transmissions (and the computer analysis that precedes and follows them) thus originate either in California, Pennsylvania, England or Sweden. (See Paisley Decl. ¶ 19).

While ValueClick's 2006 SEC Form 10-K mentions transmissions from Virginia, that is no longer the case. Several months before Revenue Science filed suit, FastClick, Inc. ceased using a previously-leased server-housing facility located in Ashburn, Virginia. (See Paisley Decl. ¶ 20). FastClick cancelled the sublease in October 2006, and since February 2007, none of the ValueClick Defendants' data transmissions has originated from the Commonwealth of Virginia, and none of the ValueClick Defendants' computer-analysis of received data has taken place in the Commonwealth of Virginia. (See Paisley Decl. ¶ 20).

### C.     The Jurisdictional Allegations are Wrong or Not Relevant

Revenue Science's jurisdictional allegations are not correct. Revenue Science alleges in paragraphs 11-13 of the Complaint: that "Defendants" operate web-server computers in Virginia, affiliate with web site publishers in Virginia, partner with a software development company in Virginia, operate a "highly interactive" web site, and "promot[e] and facilitat[e] the transaction of business between visitors to the web site and hotel operators located in the Eastern District of Virginia."

The first allegation (that web-server computers operate in Virginia) has already been addressed.  The Ashburn, Virginia data center has not transmitted or received data for any ValueClick entity since February 2007.  As of the date Revenue Science filed suit, the lease was terminated and the former data center is no longer operational. (See Paisley Decl. ¶ 22).

The second allegation (that affiliate-publishers exist in Virginia) apparently refers to Commission Junction and Be Free, the only subsidiaries involved in affiliate marketing.  While it is true that Virginia-based affiliate-publishers exist, those are individuals or companies to whom Commission Junction and/or Be Free pay commissions. (See Paisley Decl. ¶ 23).  Those affiliates do not pay revenue to any ValueClick entity. (See Paisley Decl. ¶ 23).

The third allegation (partnering with a Virginia software development company) is too conclusory for the ValueClick Defendants to investigate.  As presently advised, no such company is believed to exist. (See Paisley Decl. ¶ 24).

The fourth allegation (operating a highly interactive web site) is not true.  All relevant ValueClick Defendant sites are passive. (See Paisley Decl. ¶¶ 13, 25).

Finally, the fifth allegation (promoting/facilitating transaction of business between visitors to a web site and hotel operators located in this District) refers, if anything, to mere display advertising on behalf of some unspecified hotel.  ValueClick and/or FastClick do provide display advertising services to entities all over the United States.  However, in Q1 2007 (the quarter closest to the date Revenue Science filed the Complaint for which results are available), ValueClick (the parent) recorded ***no revenue*** from advertisers in the Commonwealth of Virginia, and FastClick recorded Virginia-

sourced revenue that was only **_0.66%_** of total United States revenues. (See Paisley Decl. ¶ 26).  The Virginia proportion of all revenues for Q1 2007, broken down by business area, was:

| Business Area | Percentage of Total U.S. Revenue Sourced from the Commonwealth of Virginia (Q1 2007) |
|---|---|
| Display Advertising (ValueClick & FastClick) | 0.34% |
| Lead Generation (Web Clients) | 0.25% |
| Affiliate Marketing (Commission Junction & Be Free) | 2.80% |
| Comparison Shopping (PriceRunner) | 3.45% |
| Technology (Mediaplex) | 0.23% |

(See Paisley Decl. ¶ 27).  In the aggregate, the named ValueClick Defendants together recorded $876,501 in Virginia-sourced revenue for Q1 2007, compared to $111,655,944 for all of the United States – an aggregate contribution of only 0.79%. (See Paisley Decl. ¶ 27).

### D.    Center of Gravity of the Witnesses and Parties

As mentioned, this is the second-filed case of this overall dispute.  In the first-filed case (pending in the Central District of California), ValueClick sued Revenue Science for infringing two internet advertising patents (related to a technology called "behavioral targeting"). (See Paisley Decl. ¶ 3).  Revenue Science is a Washington corporation with a principal place of business in Bellevue, Washington, but also has offices (like ValueClick) in Santa Barbara, California and New York, New York. (See Paisley Decl. ¶ 28).

On information and belief, Revenue Science has no offices, employees or material witnesses in the Eastern District of Virginia. (See Paisley Decl. ¶ 29).  Revenue Science's inventors are listed on the face of the patents-in-suit as residing in Washington State

(either Redmond, Newcastle or Woodinville). Revenue Science's engineering personnel, and most of their sales and marketing personnel, are located in Washington State or California. Thus, all of the important Revenue Science witnesses are located on the West Coast, either within or much closer to the Central District of California (Los Angeles). (See Paisley Decl. ¶ 29).

The bulk of the ValueClick Defendants' offices are located in California, mainly in the Los Angeles area. Even though Revenue Science's infringement allegations are opaque, the ValueClick Defendants reasonably expect that engineering staff knowledgeable about various computer servers will be material witnesses. (See Paisley Decl. ¶ 30). Based on this understanding, all material ValueClick Defendant witnesses are located in California, in the Los Angeles area, including Peter Wolfert, ValueClick's Chief Technical Officer. (See Paisley Decl. ¶ 30). Likewise, all key sales, marketing and finance personnel are located in Westlake Village, California, nowhere near the Eastern District of Virginia. (See Paisley Decl. ¶ 30). Accordingly, relevant documents are all largely located in the Los Angeles area. (See Paisley Decl. ¶ 30).

## III.     THE DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN THE COMMONWEALTH OF VIRGINIA

The ValueClick Defendants seek dismissal under Fed. R. Civ. P. 12(b)(2) because they each lack the minimum contacts under the Virginia Long-Arm Statute, Virginia common law and/or United States Constitution to be haled into the Eastern District of Virginia.

### A.     Legal Background

A federal court may only adjudicate disputes involving those parties over whom it may properly assert its jurisdiction. Under Fed. R. Civ. P. 4(k)(1), service of a summons

is only effective to establish jurisdiction over a defendant if certain criteria are met. Relevant here, since there is no nationwide service of process in patent cases which might invoke Rule 4(k)(1)(D), the conditions of Rule 4(k)(1)(A) must be met: the defendant "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed. R. Civ. P. 4(k).

Courts in the Commonwealth of Virginia may assert their authority over nonresident corporations under a theory of either specific jurisdiction or general jurisdiction. See *Coastal Video Communications, Corp. v. The Staywell Corp.*, 59 F. Supp. 2d 562, 569 (E.D. Va. 1999). These are separate and distinct bases. *Id.* If analysis under each basis yields insufficient contacts, the court must dismiss for lack of personal jurisdiction.

The Supreme Court has indicated that each analysis must include a Constitutional check, to insure when jurisdiction is asserted over a nonresident corporate defendant, that certain minimum contacts with the forum exist such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In patent cases, when evaluating Constitutional minimum contacts, the Court of Appeals for the Federal Circuit applies its own law, not the law of the Fourth Circuit. *Beverly Hills Fan Company v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994).

### B.    Specific Jurisdiction

Virginia's Long-Arm Statute, Virginia Code Section 8.01-328.1(A)(1-10), dictates the conditions under which specific jurisdiction will attach in the courts of the Commonwealth of Virginia. *First American First, Inc. v. National Association of Bank*

*Women*, 802 F.2d 1511, 1515 (4th Cir. 1986).  Specific jurisdiction is limited by the terms of the Long-Arm Statute "to a cause of action arising from" the person's contacts with Virginia. Virginia Code Section 8.01-328.1(A).  Courts interpret "arising from" in this clause to mean "caused by," in the sense of proximate cause. *Colt Defense LLC v. Heckler & Koch Defense, Inc.*, 2004 U.S. Dist. LEXIS 28690, at *39 (E.D. Va. 2004). Thus, in a patent case, if an alleged infringer has contact with Virginia, but none of that contact "causes" the alleged patent infringement, the Long-Arm Statute will not supply a basis for specific personal jurisdiction over that alleged infringer. See *Colt Defense*, 2004 U.S. Dist. LEXIS at *66-*67; see also *Majestic 125, LLC v. Sealift, Inc.*, 2006 U.S. Dist. LEXIS 49522, at *11-*12 (W.D. Mich. 2006) ("[B]ecause these contacts do not pertain to 'the making, using, offering to sell or selling an infringing product,' plaintiff's claim of patent infringement **does not arise from** Sealift's purported attempt to establish or further a manufacturer-dealer relationship with Majestic.") (emphasis added); *Recycling Sciences International, Inc. v. Soil Restoration and Recycling L.L.C.*, 2001 U.S. Dist. LEXIS 17580, at *8 (N.D. Ill. 2001).

The Court of Appeals for the Federal Circuit has interpreted the Virginia Long-Arm Statute such that specific personal jurisdiction exists over a nonresident alleged infringer only if the situs of the alleged infringement is in Virginia.  *Beverly Hills Fan*, 21 F.3d at 1571 (holding "situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee, here the place of the infringing sales in Virginia.").  For example, when an alleged infringer purposefully directed allegedly infringing goods into Virginia, which were then sold at a Virginia retailer, the "sale" in Virginia (the unauthorized act under Section 271(a) of the Patent

Act) amounted to "tortious injury in this Commonwealth" under the terms of the Long-Arm Statute. *Id.* at 1570-71. On the contrary, when the situs of the alleged infringement is in all cases elsewhere than Virginia, the Long-Arm Statute does not apply. See *Majestic 125*, 2006 U.S. Dist. LEXIS 49522 at *11-*12. In a subsequent case, the Federal Circuit observed that the situs of "making" or "using" an infringing article is "relatively straightforward," and reiterated that as a matter of federal patent law when evaluating specific personal jurisdiction, infringement occurs "where the offending act is committed." *North American Philips Corp.* v. *American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994).

The Constitutional dimension requires an analysis of whether there were "purposeful minimum contacts." *Beverly Hills Fan*, 21 F.3d at 1565. The only contacts which may be weighed for this analysis are those contacts with the Commonwealth out of which the cause of action arises. *Esab Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997); see also *Colt Defense LLC*, 2004 U.S. Dist. LEXIS 28690, at *38 ("the activities that support the jurisdictional claim must coincide with those that form the basis of the plaintiff's substantive claim,"), *id.* at *43 ("the acts comprising the claims must stem from in-forum contact"). Logically, if there are no such contacts, due process forbids a lawsuit in that forum, because zero is always less than a Constitutionally-required minimum.

There must also be a final check under the "minimum contacts" analysis to determine whether, even in the presence of purposeful minimum contacts, the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction. *Beverly Hills Fan*, 21 F.3d at 1568. For instance, when the plaintiff's interest and the state's

interest in adjudicating the dispute in the forum might be so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum, jurisdiction will not lie. *Id.*

Under this legal framework, the Court may not properly assert specific personal jurisdiction over any of the ValueClick Defendants.  First, under the Long-Arm Statute, it is undisputed that each Defendant not only lacks "purposeful minimum contacts," but indeed has zero relevant contacts.  Since any alleged infringement could only occur in California or Pennsylvania (as England and Sweden are outside the United States), no alleged infringement occurs in the Commonwealth of Virginia.  No one "imports, makes, uses, sells or offers for sale" in Virginia any of the relevant computer servers, or the methods or algorithms that they execute.

The previous FastClick use of the Ashburn, Virginia facility may not count in the specific jurisdiction analysis. The Complaint was the first notice of infringement to any ValueClick Defendant, which means that 35 U.S.C. § 287 (the patent marking and notice statute) forecloses any Revenue Science claim for pre-suit damages. Hence, the present cause of action (a claim for post-filing damages) cannot be said to "arise from" any pre-suit activities.  At a minimum, FastClick's previous attenuated contact with the forum state is not imputed to any other ValueClick Defendant. See *Fred Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) ("the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated.").

14

Even if there were some arguable "purposeful minimum contact" notwithstanding the absence of computer servers, Constitutional due process would still foreclose specific personal jurisdiction. The Plaintiff and the Commonwealth have no legitimate interest in adjudicating this dispute here. Revenue Science has no Virginia contacts. Since Revenue Science is organized and domiciled elsewhere, the Commonwealth "has no dog in this fight."

Balanced against this complete lack of a legitimate interest for Revenue Science or the Commonwealth to see this dispute adjudicated in this forum, the ValueClick Defendants would be severely burdened to litigate in a foreign forum which is geographically almost as far away from home as anywhere in the United States could be. If there were ever a case to foreclose the exercise of specific personal jurisdiction based on the "unreasonableness" prong of the due process analysis, this is the one, particularly given the ready access to a forum conveniently located (as explained below) for all of the parties, namely the Central District of California.

### C.    General Jurisdiction

Virginia common law has separately recognized "general personal jurisdiction." *Coastal Video*, 59 F. Supp. 2d at 569 (citing *Witt v. Raynolds Metals Co.*, 397 S.E.2d 873, 876 (Va. 1990)). Consistent with U.S. Supreme Court precedent (e.g., *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)), Virginia recognizes that a nonresident corporation may be subject to general personal jurisdiction if its contact with the Commonwealth is both continuous and systematic. *Coastal Video*, 59 F. Supp. 2d at 569. If a foreign corporation's contact suffices to establish general personal

jurisdiction, then the forum may host the suit even though the cause of action did not "arise from" that contact. See generally, *Helicopteros*.

The amount of contact needed to rise to "continuous and systematic" contact is far greater than the amount of contact needed to establish specific personal jurisdiction. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) ("The minimum contact inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state."); see also *Coastal Video*, 59 F. Supp. 2d at 568. The threshold for "continuous and systematic" contact usually requires at least an office in the forum state. *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 663 (E.D. Va. 1998).

Often, courts will assess what proportion of revenues come from the forum state, and if those revenues add up to a mere single-digit percentage, will find the absence of general personal jurisdiction. E.g., *Esab Group, Inc.*, 126 F.3d at 621-25 (finding no general personal jurisdiction when forum revenues were 0.079% of gross annual sales); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (finding no general personal jurisdiction when forum revenues were 2% of sales). Even revenues of $9 million and $13 million per year from the forum state have been held insufficient to establish "continuous, systematic and substantial" contact sufficient for general personal jurisdiction to attach. *Id.* (holding that two years of defendants' annual sales in the forum of $9 million and $13 million *plus* employing 13 forum residents, *plus* holding district meetings three times annually in the forum and national meetings twice annually, *plus* making 1% of annual purchases from the forum state were all not enough). On this point,

"advertising and solicitation activities alone" do not count as continuous and systematic contacts. *Coastal Video*, 59 F. Supp. 2d at 569.

When counting up the contacts, purchases from the forum state (as opposed to revenues), no matter how substantial and even if continuous, will never alone establish "continuous and systematic" contact. *Helicopteros*, 466 U.S. at 418. Likewise, commissions paid into a state (just like purchases) will not count in assessing whether contact is "continuous and systematic" for general personal jurisdiction purposes. *Corry*, 16 F. Supp. 2d at 664 (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990)). Even if contact is found to be "continuous and systematic," due process still requires an interest-balancing test to insure that the exercise of general personal jurisdiction is reasonable (that is, not a denial of fair play and substantial justice). *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.2 (9th Cir. 1993).

Just as with the analysis of specific personal jurisdiction, this Court lacks general personal jurisdiction over each of the ValueClick Defendants. No ValueClick entity is, or has ever been, domiciled or had any office in the Commonwealth of Virginia. That alone should foreclose general personal jurisdiction. See *Corry*, 16 F. Supp. 2d at 663. In addition, Virginia's contribution to ValueClick's consolidated revenues is attenuated at best. Of the named ValueClick Defendants, Virginia contributes only 0.79% to the top line. The aggregate quarterly revenue is less than $1 million. The ValueClick entities derive far less from this forum than many other defendants who were found immune from general personal jurisdiction in Virginia. E.g., *Nichols*, 991 F.2d at 1199. Even the former co-location lease, if still in effect, would not be enough. See *Martinez v. Servicios de Transportacion, M.G.*, 2007 U.S. Dist. LEXIS 11189, at *7-*15 (S.D. Tex. 2007)

(holding lease within forum – other than an office lease – insufficient to establish minimum contacts). That former lease is especially irrelevant, give that it was terminated before this action commenced. See *Cameron v. Group Voyagers, Inc.*, 308 F. Supp. 2d 1232, 1240 (D. Colo. 2004) (holding relevant time period is time complaint was filed, and that relationship within forum that ended before complaint filed insufficient to establish minimum contacts).

Moreover, all of the relevant ValueClick Defendant websites are "passive" (rather than "interactive"). The use of passive websites, which do not direct business into any one forum over another, means that the ValueClick Defendants' internet presence plays no role in the jurisdictional analysis. See *Silver Ring Splint Co. v. Digispint, Inc.*, 2007 U.S. Dist. LEXIS 25522, at *8 (W.D. Va. 2007) ("The fact that a website is *available* in Viginia – and even the fact that it is used by Virginians – is not the same as an intentional direction of activities toward Virginia sufficient to meet the [test in *ALS Scan, Inc. v. Digital Services Conslutants, Inc.,* 293 F.3d 707, 714 (4th Cir. 2002)]).

Finally, the same due process considerations mentioned above apply here as well. Revenue Science and the Commonwealth of Virginia have no interest in seeing this dispute progress in this Court. Under the interest-balancing due process test, it would be unfair and unjust to hale any of the ValueClick Defendants into this forum under a theory of general personal jurisdiction – a forum the Plaintiff itself does not call home. Where all the burden falls on the ValueClick Defendants, with no legitimate interest of the plaintiff or the forum state served, due process forecloses the exercise of general personal jurisdiction. Cf. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 115 (admonishing courts to demonstrate "an unwillingness to find the serious burdens on

an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.").

## IV.    THE EASTERN DISTRICT OF VIRGINIA IS AN IMPROPER VENUE

The ValueClick Defendants also seek dismissal under Fed. R. Civ. P. 12(b)(3) because the Eastern District of Virginia is an improper venue.   Venue is improper because none of the ValueClick Defendants are subject to personal jurisdiction. See 28 U.S.C. § 1400 (patent venue statute).

## V.    IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

Even if this Court found it had personal jurisdiction, the Court should transfer the case to the Central District of California.  If the Court finds there is personal jurisdiction, transfer is appropriate under 28 U.S.C. § 1404.  If the Court finds there is no personal jurisdiction, transfer is still appropriate, albeit under 28 U.S.C. § 1406.

### A.    The Convenience of the Parties and Witnesses Favors Transfer

There are two requirements to be met before the Court may transfer a case for the convenience of the witnesses and the parties under Section 1404.  First, the transferee court must be one where the case could have been brought – i.e., it must have personal jurisdiction over the parties (a matter not in dispute, based on each party's maintenance of an office in the Los Angeles area – sufficient for general personal jurisdiction). *Finkel v. Subaru of America, Inc.*, 2006 U.S. Dist. LEXIS 69064, at *6 (E.D. Va. 2006). Second, the convenience factors must favor the transferee forum. *Id.*  Those convenience factors include (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the

interest in having local controversies decided at home; and (7) the interests of justice. *Id.* at *8.

Under Section 1406, the case may be transferred even if this Court lacks personal jurisdiction over one or more of the ValueClick Defendants, as long as the transferee court would have personal jurisdiction. *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 594 (E.D. Va. 1992).

Here, the convenience factors clearly favor the Central District of California. Revenue Science did not select its home forum – it chose to file its retaliatory strike suit as far away from its home forum as from the ValueClick Defendants' home forum. Thus, Revenue Science cannot claim any convenience advantage for its own witnesses in this forum. *The Original Creatine Patent Company, Ltd. v. Met-RX USA, Inc.*, 387 F. Supp. 2d 564, 569-70 (E.D. Va. 2005) (transferring patent case to defendant's home forum in view of plaintiff's lack of connections with Virginia); see also *Colt*, 2004 U.S. Dist. LEXIS 28690, at *19-*21 (same).  Just as clearly, the ValueClick Defendants suffer enormous burdens to defend here. See *Tong v. Direct Trading Corp.*, 2003 U.S. Dist. LEXIS 17427, at *16-*17 (N.D. Ill. 2003) (holding that the costs of obtaining the attendance of witnesses would be considerably decreased overall if the case was transferred to Texas.).  It is likely that all of the defense witnesses would have to fly completely across the country to attend trial here, where the business and personal disruption is far greater than if trial were in the Los Angeles area. (See Paisley Decl. ¶ 31).

In sum, transfer is appropriate because it is in the best interests of, and is more convenient to, the parties and witnesses.

**B.     The Los Angeles Case is the First-Filed Case in this Dispute**

The first-filed case rule also favors transfer.  The retaliatory nature of the present suit is reason enough to transfer this case to the Central District of California. See *Smart Technologies, Inc. v. Polyvision Corp.*, 2004 U.S. Dist. LEXIS 29483, at *2-*8 (E.D. Va. 2004) (applying first-to-file rule and transferring to where first patent case was filed, even though parties were not identical and each party asserted its own patents).  If transferred, the case may be consolidated with the first-filed case.  Both cases are related, since both involve internet advertising-related patents. See *id.* at *8 (noting "all the patents at issue involve 'interactive whiteboard' technology components."); see also *Versus Technology, Inc. v. Hillenbrand Industries, Inc.*, 2004 U.S. Dist. LEXIS 28331, at *20-*25 (W.D. Mich. 2004) (in cases where each side asserted its own patents against the other, later-filed forum transferred matter to earlier-filed forum under the first-to-file rule).

**VI.     CONCLUSION**

For each of the foregoing reasons, the ValueClick Defendants respectfully request this Court dismiss under Fed. R. Civ. P. 12(b)(2) and/or 12(b)(3), or in the alternative transfer this case to the Central District of California under 28 U.S.C. § 1404/1406.  This case does not belong here, and keeping it here will offend due process and reward Revenue Science for naked forum shopping in furtherance of its illegitimate ends – the antithesis of fair play and substantial justice.

Respectfully submitted,


_____/s/  Amy S. Owen_____

Amy S. Owen (VSB #27692)
aowen@cochranowen.com
Ben Selan (VSB #65923)
bselan@cochranowen.com
Cochran & Owen LLC
8000 Towers Crescent Drive
Suite 160
Vienna, VA 22182
Ph:  (703) 847-4480
Fx:  (703) 847-4499

Robert P. Greenspoon
rpg@fg-law.com
William W. Flachsbart
wwf@fg-law.com
Flachsbart & Greenspoon, LLC
The Monadnock Building
53 W. Jackson Blvd.
Suite 652
Chicago, IL 60604
Ph:  (312) 431-3800
Fx:  (312) 431-3810

Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by electronic transmission and/or first class mail, postage prepaid, this 3rd day of July, 2007, upon:

>       Caitlin Lhommedieu (VSB #47796)
>       clhommedieu@mcguirewoods.com
>       McGuireWoods LLP
>       1750 Tysons Boulevard
>       Suite 1800
>       McLean, VA 22102
>       Ph:  (703) 712-5489
>       Fx:  (703) 712-5281
>
>
>       Robert M. Tyler (VSB #37861)
>       rtyler@mcguirewoods.com
>       David E. Finkelson (VSB #44059)
>       dfinkelson@mcguirewoods.com
>       McGuireWoods LLP
>       One James Center
>       901 East Cary Street
>       Richmond, VA 23219
>       Ph:  (804) 775-1000
>       Fx:  (804) 775-1061
>
>
>       Robert T. Haslam
>       Heller Ehrman LLP
>       275 Middlefield Road
>       Menlo Park, CA 94025
>       Ph:  (650) 324-7000
>       Fx:  (650) 324-0638
>
>       Counsel for Plaintiff


                        /s/  Amy S. Owen
                   Amy S. Owen