IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| REVENUE SCIENCE, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07CV516 |
| ) | GBL/LOB |
| VALUECLICK, INC., et al. ) | |
| ) | **DECLARATION OF SAMUEL J.** |
| Defendants. ) | **PAISLEY** |
| ) | |

1. My name is Samuel J. Paisley. I am the Chief Administrative Officer of ValueClick, Inc., one of the defendants here. I have personal knowledge of the facts herein (other than the ones stated to be on information and belief). I am competent to testify to all of the facts herein.

2. I understand that Revenue Science filed this patent infringement action on May 23, 2007 against ValueClick, Inc. and the following 100% owned ValueClick subsidiaries: FastClick, Inc.; Web Clients, Inc.; Commission Junction, Inc.; Be Free, Inc.; PriceRunner AB; and Mediaplex, Inc. I describe all seven defendants collectively as the ValueClick Defendants.

3. Revenue Science sued here without first having notified any of the ValueClick Defendants of any alleged infringement dispute. Before Revenue Science filed this action, ValueClick had already sued Revenue Science in the Central District of California for infringement of *its* patents. ValueClick filed Case No. CV 07 2502 MMM (JCX) (C.D. Cal.) against Revenue Science on March 28, 2007.

1

4. No ValueClick Defendant is organized under the laws of the Commonwealth of Virginia. Except for PriceRunner AB which is organized under the laws of Sweden, the other six ValueClick Defendants are organized under the laws of Delaware.

5. No ValueClick Defendant owns real property in the Commonwealth of Virginia.

6. No ValueClick Defendant is registered to do business in the Commonwealth of Virginia.

7. No ValueClick Defendant leases office space or any other space in the Commonwealth of Virginia.

8. No ValueClick Defendant has any office or location in the Commonwealth of Virginia.

9. No ValueClick Defendant has any telephone number, listed or unlisted, in the Commonwealth of Virginia.

10. No ValueClick Defendant employs any people in the Commonwealth of Virginia.

11. No ValueClick Defendant owns any bank accounts in the Commonwealth of Virginia.

12. All significant contracts (such as the terms and conditions that apply between ValueClick entities and all (or nearly all) advertisers and publishers) state a California venue and choice of law requirement.

13. No relevant ValueClick Defendant websites are interactive since none of them permit purchase of any products or services without interacting offline. Note that

PriceRunner AB does not sell or offer to sell products on its website – it simply provides comparisons of terms and prices of multiple merchants for a single item, and allows the consumer to "click through" to the merchant's page to begin a transaction.

14. No business of any ValueClick Defendant is specifically directed to the Commonwealth of Virginia.

15. No ValueClick Defendant has any presence of any significant kind in the Commonwealth of Virginia.

16. Instead of the Commonwealth of Virginia, ValueClick's main offices (and that of most of its Defendant subsidiaries) are in Westlake Village or Santa Barbara, California. ValueClick and/or its subsidiaries have relatively small offices in Harrisburg, Pennsylvania; Louisville, Kentucky; Marlborough, Massachusetts; New York, New York; San Francisco and Agoura Hills, California; and Chicago, Illinois.

17. ValueClick, Inc. (the parent), with its subsidiaries, is a comprehensive online marketing services company. ValueClick and its subsidiaries sell targeted and measurable online advertising campaigns and programs for advertisers and advertising agency customers, generating qualified customer leads, online sales and increased brand recognition on their behalf with large numbers of online consumers. While some ValueClick subsidiaries not named in this action sell some products for their own accounts ("e-commerce"), none of the seven named Defendants sells any goods of any kind whatsoever.

18. The business areas and business models of the ValueClick Defendants involve serving electronic data over the internet, as follows:

| Name | Business Area | Business Model |
|---|---|---|
| ValueClick, Inc. | Provide advertisers access | **Display advertising.** |

| | | |
|---|---|---|
| (Delaware) | to online advertising networks, which are composed of multiple online publishers (e.g., websites). | Receive payments from advertisers; pay a portion of that to publishers as a commission. |
| FastClick, Inc. (Delaware) | Provide advertisers access to online advertising networks, which are composed of multiple online publishers (e.g., websites). | **Display advertising.** Receive payments from advertisers; pay a portion of that to publishers as a commission. |
| Web Clients, Inc. (Delaware) | Manage online campaigns that generate qualified customer inquiries for an advertiser's product or service. | **Lead generation, opt-in email marketing.** Receive payments from an advertiser for each online consumer who opts-in. |
| Commission Junction, Inc. (Delaware) | Enable advertisers to develop their own fully commissioned online sales force comprised of third-party publishers. | **Affiliate marketing.** Receive payments from advertisers when visitor to an affiliate publisher takes agreed-on action; pay a portion of that to publishers as commission. |
| Be Free, Inc. (Delaware) (Integrated into Commission Junction in 2004). | See Commission Junction. | See Commission Junction. |
| Pricerunner AB (Sweden) | Enable consumers to research and compare products from online/offline merchants. | **Comparison Shopping.** Merchants pay primarily on a "per click" basis when consumers click through to the merchants' websites. |
| Mediaplex, Inc. (Delaware) | Provide technology on an application services provider (ASP) basis to enable advertisers to implement and manage their own online display advertising and email campaigns. | **Technology.** Advertisers primarily pay on a "per impression" basis. |

19.    In sum, all of the Defendants' relevant business activities involve either online display advertising, online lead generation, online comparison shopping, or online

4

ASP-based technology for advertisers. All of these activities are enabled by various computer servers and server farms located throughout the United States and elsewhere, but none in Virginia. Presently, the Defendants' servers and server farms are located in California (Sunnyvale, San Jose, Agoura Hills, Los Angeles and El Segundo), Pennsylvania (Mechanicsburg); England (London) and Sweden (Stockholm). All data transmissions (and the computer analysis that precedes and follows them) thus originate either in California, Pennsylvania, England or Sweden.

20. ValueClick's 2006 SEC Form 10-K mentions transmissions from Virginia, namely an Ashburn, Virginia co-location facility that was previously leased by FastClick, Inc. That is no longer true. Several months before Revenue Science filed suit, FastClick, Inc. ceased using a previously-leased server-housing facility located in Ashburn, Virginia. FastClick wrote to cancel the sublease in October 2006, and since February 2007, none of the ValueClick Defendants' data transmissions has originated from the Commonwealth of Virginia, and none of the ValueClick Defendants' computer-analysis of received data has taken place in the Commonwealth of Virginia.

21. I have read Revenue Science's jurisdictional allegations in paragraphs 11-13 of the Complaint.

22. The first allegation (that web-server computers operate in Virginia) is not true. The Ashburn, Virginia data center has not transmitted or received data for any ValueClick entity since February 2007. As of the date Revenue Science filed suit, the lease was terminated and the former data center is no longer operational.

23. The second allegation (that affiliate-publishers exist in Virginia) apparently refers to Commission Junction and Be Free, the only subsidiaries involved in

affiliate marketing. While it is true that Virginia-based affiliate-publishers exist, those are individuals or companies to whom Commission Junction and/or Be Free pay commissions. Those affiliates do not pay revenue to any ValueClick entity.

24. The third allegation (partnering with a Virginia software development company) is not specific enough for me to understand or investigate. As presently advised, no such company is known to exist.

25. The fourth allegation (operating a highly interactive web site) is not true. As I already mentioned, all relevant ValueClick Defendant sites are passive.

26. Finally, the fifth allegation (promoting/facilitating transaction of business between visitors to a web site and hotel operators located in this District) refers, if anything, to mere display advertising on behalf of some unspecified hotel. ValueClick and/or FastClick do provide display advertising services to entities all over the United States. However, in Q1 2007 (the quarter closest to the date Revenue Science filed the Complaint for which results are available), ValueClick (the parent) recorded no revenue from advertisers in the Commonwealth of Virginia, and FastClick recorded Virginia-sourced revenue that was only 0.66% of total United States revenues.

27. The Virginia proportion of all revenues for Q1 2007, broken down by business area, was:

| Business Area | Percentage of Total U.S. Revenue Sourced from the Commonwealth of Virginia (Q1 2007) |
|---|---|
| Display Advertising (ValueClick & FastClick) | 0.34% |
| Lead Generation (Web Clients) | 0.25% |
| Affiliate Marketing (Commission Junction & Be Free) | 2.80% |
| Comparison Shopping (PriceRunner) | 3.45% |
| Technology (Mediaplex) | 0.23% |

6

In the aggregate, the named ValueClick Defendants together recorded $876,501 in Virginia-sourced revenue for Q1 2007, compared to $111,655,944 for all of the United States – an aggregate contribution of only 0.79%.

28.    I understand Revenue Science states in its Complaint that it is a Washington corporation with a principal place of business in Bellevue, Washington. I am aware that Revenue Science also has offices (like ValueClick) in Santa Barbara, California and New York, New York. This fact is stated at www.revenuescience.com.

29.    On information and belief, Revenue Science has no offices, employees or material witnesses in the Eastern District of Virginia. Revenue Science's inventors are listed on the face of the patents-in-suit as residing in Washington State (either Redmond, Newcastle or Woodinville). I am informed and believe that Revenue Science's engineering personnel, and most of their sales and marketing personnel, are located in Washington State or California.

30.    The ValueClick Defendants' engineering staff knowledgeable about various computer servers are located in California, namely the Los Angeles area. Peter Wolfert, ValueClick's Chief Technical Officer, is located in Westlake Village, California. Likewise, all key sales, marketing and finance personnel are located in Westlake Village, California. Related corporate documents are all located in the Los Angeles area.

31.    Litigating in the Eastern District of Virginia would place a severe strain on the ValueClick Defendants' key employees, and would unnecessarily hamper their business operations. The prospect of attending trial across the country in Alexandria, Virginia is much more burdensome than attending the same trial in Los Angeles. Key personnel would have to contend with cross-country travel and an extended leave of

absence. The travel overhead means that these witnesses would have to stay away from their jobs even on days they are not testifying or preparing. By contrast, if trial were in Los Angeles, the disruption would be relatively minor, since employees and the company would not lose significant time.

      32.    I believe Revenue Science filed this action as part of a strategy to forum-shop, in order to gain leverage in the overall dispute. I cannot fathom any reason why this dispute should be adjudicated here, rather than Los Angeles.

      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:                                                 _____
                                                       Samuel J. Paisley